Filing # 10900202 Electronically Filed 03/03/2014 11:19:12 PM

IN THE CIRCUIT COURT FOR THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR DUVAL COUNTY, FLORIDA

CASE NO.:
DIVISION NO.:

**CONRAD MARKLE, III,**

 Plaintiff,

vs.

**CITY OF JACKSONVILLE,
JACKSONVILLE SHERIFF'S OFFICE
and J. L. NICOLETTO,**

 Defendants.

___

## COMPLAINT

Plaintiff, CONRAD MARKLE, III, sues Defendants CITY OF JACKSONVILLE, JACKSONVILLE SHERIFF'S OFFICE and JACKSONVILLE SHERIFF'S OFFICER, J.L. NICOLETTO, #5259, and alleges:

### PRELIMINARY ALLEGATIONS COMMON TO ALL COUNTS

1. This is an action for damages exceeding $15,000.00 excluding interest, costs and attorneys' fees.

2. At all times material, Plaintiff Conrad Markle, III, resided in Jacksonville, Duval County, Florida.

3. Defendant City of Jacksonville is a consolidated charter county government and political subdivision of the State of Florida.

4. Defendant JACKSONVILLE SHERIFF'S OFFICE is an agency of the consolidated City

1

of Jacksonville and an entity authorized and created under the provisions of the Florida Constitution.

5. J. L. NICOLETTO was, at all times material hereto, a patrol officer in the Jacksonville Sheriff's Office and an employee of the City of Jacksonville.

6. On March 2, 2010, Defendant J.L. Nicoletto appeared before a judge of the County Court and swore an affidavit for an arrest warrant against the Plaintiff. This affidavit is attached hereto as part of the information dated March 17, 2010 charging Plaintiff with attempted burglary and possession of burglary tools. (Exhibit 1).

7. Defendant Nicoletto stated in his affidavit that he had suspected Plaintiff and conducted a "photospread" with two witnesses. As Defendant Nicoletto wrote in his incident report on February 21, 2010 the suspect had dropped a number of items when escaping, including a saw battery marked "R.W." (Exhibit 2, attached).

8. Defendant Nicoletto stated his "experience" led him to suspect Plaintiff, although Plaintiff was then a 66 year old man with no prior criminal history who, to Nicoletto's knowledge, owned real property near the location of the attempted scrap metal theft on February 21, 2010.

9. In the incident report (Exhibit 2) Defendant Nicoletto states he attempted to locate Plaintiff at his nearby property (860 Cedar Bay Drive), but was unsuccessful. This was not surprising, since the property is a vacant one and a half acre parcel formerly occupied by the dwelling of Plaintiff's father, and Plaintiff lived miles away in the Arlington area of Jacksonville (as Defenendant Nicoletto reported in a supplemental report on February 23, 2010). In fact, at the time of the February 21, 2010 attempted burglary, Plaintiff was at the main branch of the public library using the internet.

10. The real property at 860 Cedar Bay Road had an assessed value in 2009 of $72,450 and

2

in 2010 of $79,695 and was not emcumbered by a mortgage. It consists of three half acre platted residential lots. Plaintiff also owned other real property and had no known motive to steal metal to sell for scrap.

11. After learning Plaintiff's address, Defendant Nicoletto made no attempt to contact or interview Plaintiff regarding his whereabouts on February 21, 2010 or to corroborate his unfounded suspicion that Plaintiff could have been motivated to engage in this historically uncharacteristic criminal activity.

12. Instead, acting upon his knowledge that the witnesses to the February 21, 2010 incident had described a suspect who at least bore a superficial physical resemblance to Plaintiff, Defendant Nicoletto told them that the Plaintiff was living in a car on property on Cedar Bay Road and matched their description. Defendant Nicoletto then created a "photospread" which including Plaintiff's DMV photo which he showed the witnesses the next day, following which, and again without soliciting any explanation from Plaintiff, Defendant Nicoletto attempted to arrest Plaintiff at his Arlington address. These circumstances would not cause a reasonable person to believe that the crime had been committed by the Plaintiff, and no probable cause existed for an arrest or the issuance of a warrant.

13. As a result of Defendant Nicoletto's false suspicion and inclusion of Plaintiff in the "photospread," one of the two witnesses erroneously identified Plaintiff as the man who had attempted to burglarize his truck on February 21, 2010. Defendant Nicoletto himself erroneously identified the witness "Stephen Buford." Defendant Nicoletto knew or should have known that no probable cause existed for Plaintiff to be charged with a crime or for a warrant to issue.

14. As a result of Defendant Nicoletto's affidavit regarding the erroneous identification of

Plaintiff, an arrest warrant was issued and on March 9, 2010 executed upon Plaintiff.

15. Plaintiff's bond was set at a total of $20,006 despite the fact that he had no prior criminal history whatsoever, that he owned unencumbered property in this county of substantial value, grew up in and has lived here for most of his life.

16. On March 26, 2010 another attempted burglary took place at the same location as the attempt on February 21, 2010, and the actual perpetrator of both crimes was captured and charged with criminal trespass and resisting arrest without violence, both misdemeanors. The witness who had been misled at the "photoshoot" immediately informed the police who were arresting the perpetrator that a false identification of Plaintiff had been made and that Plaintiff was innocent of any wrongdoing since both attempted thefts had been made by the same man who was arrested on March 26, 2010. In fact, the witness gave the police a copy of the February 21, 2010 incident report, which was referenced in the March 26, 2010 incident report (Exhibit 3, attached). For unknown reasons, the March 26, 2010 incident report lists the suspect Richard Whitley's birthdate as that of Plaintiff rather than his own, despite the fact that Whitley is twelve years younger. Whitley has an extensive criminal history, both before and since March 26, 2010. Although identified by witnesses on March 26, 2010 as the man they had chased on February 21, 2010 and then, on Defendant Nicoletto's suggestion, misidentified as the Plaintiff, Richard Whitley was never charged with any offense from February 21, 2010. He pled guilty on March 27, 2010 to the charges from the day before and was sentenced to a total of 15 days in jail and assessed fees of $283.00 which were never paid. By comparison, Plaintiff was charged with two felonies, booked into the county jail on March 9, 2010 and only freed when he posted $20,006 in cash as a bond from his own assets.

17. Despite the retraction by the witness of his identification of Plaintiff, no action was taken by the Defendant Jacksonville Sheriff's Office to inform the State Attorney's Office of Plaintiff's innocence on March 26, 2010 nor at any time thereafter prior to June 30, 2010 when Buford Stephen Sims, Jr. revealed the arrest of the actual perpetrator of the February 21, 2010 attempted burglary during his deposition in Plaintiff's criminal case. Despite the sole "photospread" witness's retraction on March 26, 2010 the criminal case filed against Plaintiff was not dropped until July 28, 2010. Despite the deposition of the sole "photospread" witness on June 30, 2010 with the Assistant State Attorney present, the criminal case against Plaintiff was not dropped until July 28, 2010 following a motion to dismiss (attached as Exhibit 4).

18. Defendant Nicoletto was engaged in bias-based profiling in singling out Plaintiff when he either intentionally or unintentionally applied his personal, societal or organizational biases or stereotypes in making the decision to pursue Plaintiff, despite the lack of probable cause to do so, including his decision to swear out a warrant, where Plaintiff's background, perceived economic status, age, culture and/or other personal characteristic was the only reason for Defendant Nicoletto's decision and action.

19. Defendant Jacksonville Sheriff's Office and Defendant City of Jacksonville were negligent in the training and retention of Defendant Nicoletto as an employee and officer.

20. Plaintiff has complied with all conditions precedent as contemplated in 768.28 Fla. Statutes, and City of Jacksonville Municipal Ordinances 112.201 *et seq.*, including timely written notice to the Florida Department of Insurance in compliance with 768.28 Fla. Statutes.

## COUNT I – FALSE IMPRISONMENT

21. Defendant J.L. Nicoletto intended to cause Plaintiff's confinement despite the lack of

probable cause sufficient to properly bring about either Plaintiff's arrest or the issuance of a warrant.

22. Defendant J.L. Nicoletto erroneously identified Plaintiff as the perpetrator of the February 21, 2010 attempted burglary to two witnesses despite the seizure of a saw battery dropped by the perpetrator marked "R.W.," despite the Plaintiff having no criminal history, despite Plaintiff owning substantial amounts of real property and having no apparent reason, at age 66, to commence criminal activity by trying to steal metal from a commercial industrial area.

23. After the arrest of Richard Whitley ("R.W.") on March 26, 2010 and the retraction of the identification obtained by his "photospread" Defendant J.L. Nicoletto neither acted to correct his error nor to clear Plaintiff of the false charges which had led to his false imprisonment.

24. Defendant Nicoletto has in fact subsequently arrested the actual perpetrator of the February 21, 2010 incident in connection with metal thefts, at least twice thereafter through April 2011, but Whitley was never charged in the February 21, 2010 incident nor did Defendant Nicoletto take any action to correct his previous actions against Plaintiff.

25. The Fourth Amendment of the United States Constitution and Florida law require probable cause for the issuance of warrants. One working definition of "probable cause" used previously by the Florida Attorney General is an "apparent state of facts found to exist upon reasonable inquiry, (that is, such inquiry as the given case renders convenient and proper;) which would induce a reasonably intelligent man to believe "that the accused had committed the offense which occurred). [AGO 96-93 quoting Black's Law Dictionary]. (emphasis added). Over a week passed from the date of the first crime, February 21, 2010 until March 2, 2010 when Defendant Nicoletto swore the affidavit which led to issuance of the warrant. During that time Defendant Nicoletto either failed to make the reasonable inquiry required for probable cause or chose to ignore

those facts which presented any reasonable person to believe Plaintiff could have been the man seen on February 21, 2010.

26. Plaintiff was arrested on the improperly obtained warrant on March 9, 2010, imprisoned until bond was set and posted and required to plead to charges set forth on March 17, 2010 in an information.

27. Plaintiff was required to obtain private defense counsel at considerable expense to contest the charges brought against him, including costs of investigation and depositions, and to live under the stress and disgrace of improper prosecution until July 28, 2010.

28. Plaintiff was deprived of the use of $20,006 posted as bond from March 10, 2010 until July 30, 2010 (as to $10,003) and August 13, 2010 (as to the remaining $10,003).

29. Plaintiff has thus been deprived of both is liberty and his property without due process of law in that no probable cause existed absent the improper suggestions and representations of Defendant Nicoletto in obtaining a warrant for Plaintiff's arrest.

30. By reason of the above, Plaintiff has been greatly humiliated, and suffered mental and bodily distress and was gravely injured in his character and reputation.

31. The City of Jacksonville and the Jacksonville Sheriff's Office are responsible for the actions and damages resulting from the actions of Defendant Nicoletto.

## COUNT II – 42 USC §1983 VIOLATION

32. Plaintiff realleges paragraphs 1 to 29 and 31, as set forth heretofore.

33. The effect of the issuance of a warrant on improper allegations of Defendant Nicoletto is to violate the civil rights of Plaintiff under 42 USC §1983 and §1988, the Fourth Amendment and the Fourteenth Amendment of the United States Constitution.

34. Jurisdiction in 42 USC §1983 cases is concurrent in the Federal and State courts. Venue is appropriate in Duval County, Florida where all the relevant events took place and the Plaintiff resides.

35. The circumstances set forth above establish the violation both of the Fourth Amendment's probable cause requirement and the Fourteenth Amendment's due process requirements in connection with the deprivation of the liberties, property, rights and immunities of Plaintiff in connection with his improper arrest and imprisonment on March 9, 2010 and the events preceding and subsequent to same.

36. 42 USC §1988 provides that Plaintiff may recover his reasonable attorney's fee as part of costs.

37. Plaintiff has hired the undersigned attorney to represent him in this action and agreed to pay a reasonable fee for those legal services.

38. By reason of the Defendant's violations of Plaintiff's civil rights, Plaintiff has been greatly humiliated, and suffered mental anguish and bodily distress and gravely injured in his character and reputation, loss of use of funds, costs and attorney fees, as to Plaintiff's damage.

WHEREFORE, Plaintiff requests judgment against Defendants for damages, together with attorney's fees and other costs, and such other and further relief as the Court may deem proper.

## COUNT III – NEGLIGENCE OF DEFENDANT JACKSONVILLE SHERIFF'S OFFICE AND DEFENDANT CITY OF JACKSONVILLE

39. Plaintiff realleges paragraphs 1 to 29 and 31, 33 and 35.

40. At all times material Defendant City of Jacksonville and Defendant Jacksonville

Sheriff's Office by and through their employees and agents, had a duty to use reasonable care in the performance of law enforcement activities so as not to falsely accuse, cause the issuance of arrest warrants without probable cause, falsely arrest or falsely imprison persons within the foreseeable zones of risk created by such activities, including Plaintiff, or to otherwise violate Plaintiff's constitutional rights.

41. The above described acts and omissions of Defendant Nicoletto were performed within the course and scope of his employment with the Jacksonville Sheriff's Office and City of Jacksonville.

42. At all times material, Defendant Jacksonville Sheriff's Office and Defendant City of Jacksonville, through their employees and agents, had a duty to ensure that individuals who were the subject of police actions were not falsely accused, subjected to warrants obtained without probable cause, falsely arrested or falsely imprisoned or otherwise subjected to violation of the constitutional rights.

43. At all times material, Defendant Jacksonville Sheriff's Office and Defendant City of Jacksonville, through their employees and agents, had a duty to act prudently and reasonably when identifying suspects, obtaining warrants, arresting and imprisoning suspects.

44. At all times material, Defendant Jacksonville Sheriff's Office and Defendant City of Jacksonville, through its employees and agents, had a duty to act prudently and reasonably in avoiding violation of individual's constitutional rights.

45. Defendant Jacksonville Sheriff's Office and Defendant City of Jacksonville, through their employees and agents, breached their duty in one or more of the following ways:

    a. failing to provide proper and adequate training for Defendant Nicoletto such that he would have sufficient knowledge and expertise to perform his duties without

falsely accusing, obtaining a warrant, causing the false arrest and false imprisonment of Plaintiff;

b. failing to provide proper and adequate training for Defendant Nicoletto such that he would have sufficient knowledge and expertise to avoid violating the civil rights of Plaintiff;

c. failing to establish or effectively enforce sufficient protocols, rules, regulations and policies governing performance of duties when investigating and focusing on specific individuals as suspects, such as Plaintiff, without excluding bias-based profiling of the Plaintiff.

d. failing to ensure that Defendant Nicoletto followed policies and procedures regarding the need for probable cause to obtain a valid warrant; and

e. failing to ensure that once witness Sims had retracted his improperly obtained identification of Plaintiff on March 26, 2010, that this was communicated to the State Attorney's Office or to the Plaintiff.

46. As a direct and proximate result of the negligent acts and omissions of Defendant Jacksonville Sheriff's Office and Defendant City of Jacksonville, Plaintiff suffered financial injuries, mental anguish and loss of capacity for the enjoyment of life, fright, fear, shock, trauma, humiliation and grave injury to his character and reputation. The losses are either permanent or continuing, and Plaintiff will suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment for:

a. Compensatory damages for resulting injuries, pain, suffering, mental anguish and loss of capacity for the enjoyment of life, expenses of defense, loss of income and loss of reputation.

b. Costs associated with bringing this claim.

c. Any other relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff CONRAD MARKLE, III respectfully demands trial by jury on all issues so triable.

                                      **JOHN S. WINKLER, P.A.**

                            /s/ JOHN S. WINKLER
            BY:_____
                    JOHN S. WINKLER
                    Florida Bar No. 559830
                    2515 Oak Street
                    Jacksonville, FL 32204
                    Telephone: (904) 384-9918
                    Facsimile: (904)389-6431
                    eservicewinkler@yahoo.com
                    Attorney for Plaintiff